UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

STANFORD STATON                    CIVIL ACTION NO. 09-cv-1076

VERSUS                             JUDGE HICKS

WARDEN, WINN CORRECTIONAL          MAGISTRATE JUDGE HORNSBY
CENTER

## REPORT AND RECOMMENDATION

### Introduction

A Sabine Parish jury convicted Stanford Dewayne Staton ("Petitioner") of distribution of crack cocaine.  Petitioner was adjudicated a second-felony offender and sentenced to 25 years at hard labor.  He pursued a direct appeal, State v. Staton, 922 So.2d 1216 (La. App. 3d Cir. 2006), writ denied, 942 So.2d 553 (La.), and a post-conviction application.  He now seeks federal habeas corpus relief on the grounds that the evidence was insufficient to support his conviction and that his counsel was ineffective when he did not file a motion to suppress a recorded phone conversation.  For the reasons that follow, it is recommended that the petition be denied.

### Sufficiency of the Evidence

A drug task force, with the assistance of informant Michael Marshall, set up an operation at the Siesta Motel in Many, Louisiana.  Police rented a room that they equipped with a recording device on the telephone.  The officers were stationed in a nearby room, but the telephone recording device did not transmit a signal to them.  Marshall was equipped

with a body microphone, which did transmit to the officers and allow them to hear his side of telephone conversations and conversations in the room.  Officers also set up a video camera to record activities in the parking lot.

Marshall, who admitted to prior convictions for burglary and forgery related to supporting a prior drug habit, testified that he was recovering from his habit when he decided to call the task force and volunteer to be an informant.  He reasoned that drug dealers in the community would not offer him drugs once it became known that he was working as a "snitch" with the police.  Marshall testified that the officers did not tell him who to call.  He called Petitioner, whose number he knew, and they had the following conversation:

Petitioner:     Hello.

Marshall:       Hey, man.

Petitioner:     Hey.

Marshall:       Hey, what's up? It's Mike.

Petitioner:     Yeah.

Marshall:       Hey, you feel like coming to see me? I got fifty. It's in cash.

....

Marshall:       Ok, I didn't think you could hear me. Hey, but, uh, I got a room, I'm not at my house.

Petitioner:     You got a what?

Marshall:       I said I got a room. I'm not at my house. I had to get out of my house a little bit, my Mom was tripping. So, I come and got a room.

Petitioner:     Oh, yeah?

Marshall:       Yeah. Can you do that, or what?

Petitioner:     Well, shit, yeah, yeah.

Marshall:       Ok, I'm at the Siesta.

Petitioner:     Yeah.

Marshall:       Room 123. You know how it's shaped like an "L"?

....

Petitioner:     Yeah.

Marshall:       Ok, I'm at the very end. Like at the end of the "L".

Petitioner:     Ok.
....

Marshall:       Ok, I'm in room 123. How long do you think it'll take you?

Petitioner:     Not long.

Marshall:       Ok, buddy.

Petitioner:      Yeah.

Marshall:       Bye.

Marshall testified that Petitioner arrived at the motel 10 or 15 minutes later, but he was riding in the passenger seat of a car driven by another man.  Marshall recognized the man in the car, having seen him driving around town, but he did not know his name.  The driver, Marcello Hicks, got out of the car.  Marshall asked Petitioner twice if he was coming in, and Petitioner nodded his head towards Hicks.  Marshall purchased the "50" from Hicks,

who identified himself by his first name and provided his phone number.  The substance purchased by Marshall proved to be crack cocaine.

Petitioner testified in his own defense. He told the jury that he was sleeping that afternoon at the home of a friend, Samantha, where he had not stayed before.  Petitioner denied that he had given Samantha's number to Marshall or that he had talked to him on the phone before, but he had to admit that Marshall obviously knew where he was, so Petitioner then said he had run into Marshall earlier that day and given him the number.  He said the two men had spent time in jail together in 1996, but he denied talking to him on the phone or in person until that day in 2003.  He could not explain why Marshall would suddenly want to call him, unless it was to talk about old times spent together in jail.

Petitioner testified that he did not know what Marshall was talking about when he said he had a 50, and he did not intend to go to the motel.  Rather, he intended to attend a barbecue at a friend's house, and he did.  While there, one of his friends asked if he had $10 to purchase some meat.  Petitioner said that he did, and a friend said that Marcello Hicks was going to the store and that Petitioner should go with him.

Petitioner testified that Hicks said he had to run somewhere first, and they showed up at the motel.  Petitioner recognized Mike Marshall when he looked out the door. Petitioner told Hicks, "I believe that boy called me earlier." Hicks went into the motel room, closed the door, and returned with some money in his hand.  Petitioner said that he never got out of the car, and the men then went to Brookshire's to buy some ribs, hamburger meat, and hot links.

Petitioner admitted to prior convictions for carnal knowledge of a juvenile and possession of marijuana with intent to distribute.

A 12-person jury returned a unanimous verdict of guilty of distribution of crack cocaine. Petitioner argues that the evidence is not sufficient to support the conviction. In evaluating the claim "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 99 S.Ct. 2781, 2789 (1979). "[I]t is the responsibility of the jury – not the court – to decide what conclusions should be drawn from evidence admitted at trial." <u>Cavazos v. Smith</u>, 132 S.Ct. 2, 4 (2011).

Petitioner presented this argument to the state court on direct appeal.  The appellate court discussed the evidence in detail, recited the <u>Jackson</u> standard, and found that there was sufficient evidence to support the conviction.  <u>State v. Staton</u>, 922 So.2d at 1217-20; Tr. 35.

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d). Thus a state-court decision rejecting a sufficiency challenge is reviewed under a doubly deferential standard. It may not be overturned on federal habeas unless the decision was an objectively unreasonable application of the deferential <u>Jackson</u> standard. <u>Parker v. Matthews</u>,132 S.Ct. 2148, 2152 (2012).

As the state court noted, Hicks and Petitioner arrived outside Room 123 within 10 to 15 minutes of Marshall's phone call to Petitioner.  Hicks then sold to Marshall a "50," which is exactly what Marshall asked Petitioner to bring him.  A rational jury would be well within its rights to reject as incredible Petitioner's preposterous testimony. When the evidence is viewed in the light most favorable to the prosecution, a rational juror could easily have found the elements of distribution of crack cocaine, and the state court's application of Jackson to these facts was entirely reasonable.  Habeas relief is not permitted with respect to this claim.

**Ineffective Assistance of Counsel**

Petitioner argues that counsel was ineffective because he did not file a motion to suppress or otherwise object with respect to the admission of the recorded telephone call between Mike Marshall and Petitioner.  To prevail on the claim, Petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that, had counsel performed reasonably, there is a reasonable probability that the result in his case would have been different. Strickland v. Washington, 104 S.Ct. 2052, 2064 (1984).

"Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Kimmelman v. Morrison, 106 S.Ct. 2574, 2583 (1986); Shed v. Thompson, 2007 WL 2711022, *5 (W.D. La. 2007).  Petitioner contends that the recording should have been suppressed as being made in violation of state and federal statutes regarding such matters.

Just as petitioner would have to prove the merit of his Fourth Amendment claim to obtain habeas relief, he should also have to establish merit with respect to a claim that counsel should have moved to suppress based on statutory grounds.

Louisiana's Electronic Surveillance Act, La. R.S. 15:1301, et seq., generally prohibits the interception and disclosure of telephone communications.   There are, however, exceptions to the general prohibition.   One of them is where one of the parties to the communication "has given prior consent to such interception."   La. R.S. 15:1303(C)(3) and (4).   The exception has been applied in similar factual situations, such as when a deputy suspected of being involved in drugs was taken into custody, and he agreed to cooperate by telephoning the defendant in an attempt to purchase drugs.   The telephone conversation was recorded under police supervision. There was evidence the deputy consented to the recording, so the recording was admissible.   State v. Esteen, 846 So.2d 167 (La. App. 5th Cir. 2003).   Similar tape recordings made with the consent of informants who set up drug purchases were admitted in State v. Pierre, 869 So.2d 206 (La. App. 5th Cir. 2004) and State v. Cutrera, 558 So.2d 611 (La. App. 1st Cir. 1990).   The federal statute governing interception of communications has a similar provision that it is not unlawful under the chapter for a person acting under color of law to intercept a communication where one of the parties to the communication has given prior consent to such interception.   18 U.S.C. § 2511(2)(c).  Both state and federal decisions recognize that consent to interception of the call may be inferred from a participant's knowledge that the call is being monitored as part of a surveillance operation to which he has consented.   U.S. v. Wake, 948 F.2d 1422, 1426 (5th

Cir. 1991); U.S. v. Gomez, 900 F.2d 43, 44 (5th Cir. 1990); and State v. Durham, 996 So. 2d 642, 649 (La. App. 2d Cir. 2008).

There was no motion to suppress filed in this case, so the issue was never directly tested. There was, however, testimony at the trial that Marshall fully cooperated in the operation, even initiating it by contacting police. He described the setup of the room as including the police officer searching the room, getting him his wire, and setting up the phone lines for the recording device. Tr. 310. He testified that he was aware that his phone conversation was being recorded. Tr. 316. Lt. Cobbs also described how he would enter the room between operations and change out the audio tapes, remove the purchased drugs, search Marshall, give him more buy money, and move on to the next dealer. Tr. 287.

Petitioner presented this argument to the state court in his post-conviction application. Tr. 15. It appears the trial court, rather than set the application for briefing, simply wrote on it "motion denied" a few days after it was filed. Tr. 26. The appellate court denied a writ application, stating only: "There is no error in the trial court's denial of Relator's application for post-conviction relief." Tr. 13. The Supreme Court of Louisiana denied writs without comment. Tr. 5.

Petitioner's claim was adjudicated and denied on the merits by the state court, so 28 U.S.C. § 2254(d) directs that the question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether the determination was unreasonable, which is a substantially higher threshold. Schriro v. Landrigan, 127 S.Ct. 1933, 1939 ( 2007). The Strickland standard is a general standard, so

a state court has even more latitude to reasonably determine that a defendant has not satisfied it. The federal court's review is thus "doubly deferential." <u>Knowles v. Mirzayance</u>,129 S.Ct. 1411, 1420 (2009).

"If this standard is difficult to meet, that is because it was meant to be." <u>Harrington v. Richter</u>, 131 S.Ct. 770, 786 (2011).  Section 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and reaches only "extreme malfunctions" in the state criminal justice system.  <u>Id</u>.  Thus, "even a strong case for relief  does not mean the state court's contrary conclusion was unreasonable."  <u>Id</u>.

Where, as in this case, "a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."  <u>Harrington</u>, 131 S.Ct. at 783.  There is no basis in applicable law or the facts found in the state court record to suggest that a motion to suppress the telephone recording might have been successful.  All indications are to the contrary, and Petitioner has not even addressed in his filings the application of the consent exceptions. Counsel was not ineffective for not filing a motion to suppress on these grounds, there is no basis to find such a motion would have succeeded, and the state court did not act unreasonably when it denied the post-conviction application.  Habeas relief is not permitted on this final claim.

Accordingly,

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be **denied**.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within seven (7) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b).  Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 25th day of July, 2012.

MARK L. HORNSBY
UNITED STATES MAGISTRATE JUDGE